## UNITED STATES DISTRICT COURT
## FOR THENORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| HARTFORD UNDERWRITERS INSURANCE COMPANY, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 22-cv-6184 |
| EASYWORKFORCE SOFTWARE, LLC f/k/a EASYWORKFORCE SOFTWARE, INC. and MARIA TAPIA-RENDON, individually and on behalf of all others similarly situated, | ) ) ) ) ) ) | |
| Defendants. | ) | |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, HARTFORD UNDERWRITERS INSURANCE COMPANY ("Hartford"), by and through its attorneys, Michael J. Duffy and Michael J. O'Malley, of Wilson Elser Moskowitz Edelman & Dicker LLP, for its Complaint for Declaratory Judgment against EASYWORK FORCE SOFTWARE, LLC f/k/a EASYWORKFORCE SOFTWARE, INC. ("EasyWorkforce") and MARIA TAPIA-RENDON, individually ("Tapia-Rendon") and on behalf of all others similarly situated ("Underlying Plaintiffs"), states as follows:

## STATEMENT OF THE CASE

1.      This action seeks a declaration, pursuant to 28 U.S.C. §2201, that Hartford owes no insurance coverage obligations to EasyWorkforce for the claims raised in the lawsuit filed by the Underlying Plaintiffs and styled: *Maria Tapia-Rendon, individually and on behalf of all others similarly situated, v. Employer Solutions Staffing Group II, LLC; United Tape & Finishing Co., Inc.; and EasyWorkforce Software, LLC*, Case No.: 1:21-cv-3400, filed in the United States

277164679v.1

District Court for the Northern District of Illinois (the "Underlying Action"). A copy of the Complaint filed in the Underlying Action is attached hereto as "**Exhibit A**."

## PARTIES

2.      Hartford is an insurance company formed under the laws of the State of Connecticut with its principal place of business in Hartford, Connecticut.

3.      EasyWorkforce is a Delaware limited liability company with its principal place of business located at 3141 Commerce Parkway, Miramar, Florida. No member of EasyWorkforce is a citizen of Connecticut.

4.      Tapia-Rendon is an individual and a citizen of Illinois. Tapia-Rendon is named herein only as a nominal defendant because she is the claimant in the Underlying Action. No relief is sought against Tapia-Rendon.

## JURISDICTION AND VENUE

5.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 as the amount in controversy exceeds $75,000, exclusive of interest and costs, and the parties are citizens of different states.

6.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 because the parties conduct business within this District, Tapia-Rendon resides within this District, this case involves a coverage dispute with respect the Underlying Action which is pending within this District, and this coverage dispute arises from events that occurred within the geographical boundaries of in this District.

## FACTS

A.      *THE UNDERLYING ACTION*

7.      On June, 24, 2021, the Underlying Plaintiffs commenced a putative class action lawsuit in the United States District Court for the Northern District of Illinois against Employer

Solutions Staffing Group II, LLC ("ESSG"), United Tape & Finishing Co., Inc. ("United Tape"), and EasyWorkforce (collectively, the "BIPA Defendants") alleging violations of the Illinois Biometric Information Privacy Act, codified as 740 ILCS/14 and Public Act 095-994 ("BIPA"), from June 24, 2016 to present.

8.     EasyWorkforce is in the business of designing software and web sites for employers to manage and collect employee data.

9.     The Complaint in the Underlying Action identifies both EasyWorkforce Software, LLC and EasyWorkforce Software, Inc. as a defendant.

10.     EasyWorkforce Software, LLC is the successor-in-interest to EasyWork Force Software, Inc. and/or EasyWorkforce Software, Inc. converted to a limited liability company as of March 19, 2020.

11.     The Underlying Action was brought on behalf of the following putative classes:

- **ESSG Class:** All individuals who used a biometric timeclock in the State of Illinois in the course of employment by ESSG on or after June 24, 2016.

- **United Tape Class:** All individuals who used a biometric timeclock while working at any United Tape facility in the State of Illinois on or after June 24, 2016.

- **EasyWorkforce Class:** All individuals who used any EasyWorkforce biometric timeclock in the State of Illinois on or after June 24, 2016.

12.     The Underlying Action alleges Tapia-Rendon was employed by ESSG and staffed at United Tape's facility in Woodridge, Illinois. The Underlying Plaintiffs allegedly were required to use a biometric time clock each time they started and finished work (including breaks) in lieu of using a time card.

13.     The Underlying Action alleges the biometric time clock scanned employees' unique fingerprints each time they clocked in or out.

14.     According to the Underlying Plaintiffs, the BIPA Defendants never provided them with any written material stating they were collecting, retaining, or using their fingerprints or a representation derived from their fingerprints. The Underlying Plaintiffs further allege the BIPA Defendants never obtained written consent, or a release as a condition of employment, authorizing the collection, storage, or use of their fingerprints or a representation derived from the Underlying Plaintiffs' fingerprints. The Underlying Plaintiffs also allege the BIPA Defendants did not create a written policy available to the public establishing a retentions schedule and destruction guidelines with regard to the biometric information from their fingerprints.

15.     Tapia-Rendon and the putative EasyWorkforce Class assert three causes of action against EasyWorkforce and demand the following relief:

- Count 7 - Violation of BIPA (740 ILCS 14/15): Underlying Plaintiffs allege EasyWorkforce violated BIPA: (i) each time it captured and collected the Underlying Plaintiffs' biometric identifiers without first informing them in writing of the purpose of doing so and the length of time EasyWorkforce would store and use the Underlying Plaintiffs' and the EasyWorkforce Class' biometric information; (ii) by failing to provide a publicly available retention schedule; and (iii) by failing to obtain a written release from the Underlying Plaintiffs and the EasyWorkforce Class before capturing and collecting their biometric identifiers.

  In connection with this cause of action, the Underlying Plaintiffs seek an order: (a) declaring the BIPA Defendants' actions violate BIPA; (b) awarding injunctive and equitable relief as necessary to protect each class; (c) finding each BIPA Defendant's conduct intentional or reckless and awarding $5,000 in damages per violation, per Class member, as authorized by 740 ILCS 14/20(2); (d) awarding attorney's fees under 740 ILCS 14/20(e); (e) awarding pre- and post-judgment interest; and (f) awarding such other and further relief as the Court deems equitable and just.

- Count 8 - Negligence: Underlying Plaintiffs allege EasyWorkforce breached a duty to Plaintiff and the EasyWorkforce Class by failing to: (i) inform them in writing that their biometrics were being captured, collected, stored, and used; (ii) inform them in writing of the specific purpose for which their biometrics were being collected, stored, and used; inform them of the length of time that their biometrics would be maintained; and (iii) obtain a written release authorizing collection of their biometrics. Underlying Plaintiffs also allege mental anguish and unspecified injury stemming from this breach.

  In connection with this cause of action, the Underlying Plaintiffs seek an order: (a) declaring the BIPA Defendants' conduct negligent; (b) awarding damages in an

4

amount to be proven at trial; (c) awarding punitive damages; (d) awarding pre- and post-judgment interest; and (e) awarding such other and further relief as the Court deems equitable and just.

- <u>Count 9 - Intrusion Upon Seclusion</u>: The Underlying Plaintiffs and the EasyWorkforce Class allege EasyWorkforce "intentionally and unlawfully intruded upon to Plaintiff and the EasyWorkforce Class's private affairs and concerns" by "intentionally using biometric-scanning devices to capture and collect" the Underlying Plaintiffs' and the EasyWorkforce Class's fingerprints. The Underlying Plaintiffs and the EasyWorkforce Class also allege they "held a reasonable expectation that their biometric identifiers would not be captured, collected, stored, or used without their informed consent", and as a result of this intrusion, the Underlying Plaintiffs allege the BIPA Defendants have caused and continue to cause mental anguish and unspecified injury.

  In connection with this cause of action, the Underlying Plaintiffs seek an order: (a) declaring the BIPA Defendants' conduct to be an intrusion upon seclusion; (b) awarding damages in an amount to be proved at trial; (c) awarding punitive damages; (d) awarding pre- and post-judgment interest; and (e) awarding such other and further relief as the Court deems equitable and just.

## B. THE POLICIES

16.    Hartford issued certain Business Owner's primary ("Primary") and Umbrella ("Umbrella") insurance policies bearing policy number 42 SBM AH3RP9 to EasyWork Force Software, Inc. — not  EasyWork Force Software, LLC — with effective dates of September 25, 2020 to September 25, 2021 ("2020-2021 Policy"), renewed for the term September 25, 2021 to September 25, 2022 ("2021-2022 Policy) and subsequently renewed for the term September 25, 2022 to September 25, 2023 ("2022-2023 Policy" and collectively, the "Policies"). True and accurate copes of the Policies are attached, respectively, as "**Exhibits B, C, and D**."

17.    Subject to all of their terms, all of the Primary Policies', Coverage Form SL 00 00 10 18, state:

### A.    COVERAGES

#### 1.    Business Liability Coverage (Bodily Injury, Property Damage, Personal And Advertising Injury) Insuring Agreement

a.    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury",

"property damage" or "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury", "property damage" or "personal and advertising injury" to which this insurance does not apply.

\*       \*       \*

**b.** This insurance applies:

**(1)** To "bodily injury" and "property damage" only if:

**(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

**(b)** The "bodily injury" or "property damage" occurs during the policy period; and

**(c)** Prior to the policy period, no insured listed under Paragraph **1.** of Section **C.** Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**(2)** To "personal and advertising injury" caused by an offense arising out of your business, but only if the offense was committed in the "coverage territory" during the policy period.

\*       \*       \*

**c.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **C.** Who Is

6

An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

*See* Exs. B through D.

18.    Subject to all of their terms, all of the Primary Polices also provide the following

exclusions, conditions, and definitions:

**B.    EXCLUSIONS**

**1.    Applicable To Business Liability Coverage**

This insurance does not apply to:

**a.    Expected Or Intended Injury**

**(1)**    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property; or

**(2)**    "Personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

*            *            *

**p.    Personal And Advertising Injury**

"Personal and advertising injury":

*            *            *

**(2)**    Arising out of oral, written, electronic, or any other manner of publication of material whose first

7

publication took place before the beginning of the policy period;

       \*       \*       \*

**(8)** Arising out of an offense committed by an insured whose business is:

    **(a)** Advertising, broadcasting, publishing or telecasting;

    **(b)** Designing or determining content of web sites for others; or

    **(c)** An Internet search, access, content or service provider.

       \*       \*       \*

**(11)** Arising out of the violation of a person's right of privacy created by any state or federal act.

However, this exclusion does not apply to liability for damages that the insured would have in the absence of such state or federal act;

       \*       \*       \*

**(15)** Arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information;

       \*       \*       \*

**q.** **Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability**

**(1)** Damages because of "bodily injury" or "property damage" arising out of any access to or disclosure of

8

any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)** Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

This exclusion applies even if such damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraphs **(1)** or **(2)** above.

However, unless Paragraph **(1)** above applies, this exclusion does not apply to damages because of "bodily injury".

\*       \*       \*

**r.      Employment-Related Practices**

"Bodily injury" or "personal and advertising injury" to:

**(1)** A person arising out of any:

**(a)** Refusal to employ that person;

**(b)** Termination of that person's employment; or

**(c)** Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, malicious prosecution or false arrest directed at that person;

\*       \*       \*

**t.      Recording And Distribution Of Material Or Information In Violation Of Law**

9

"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)** The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)** The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)** The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)** Any federal, state or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

\*      \*      \*

## C.   WHO IS AN INSURED

**1.**   If you are designated in the Declarations as:

**a**   An individual, you and your spouse are insureds, but only with respect to the conduct of a business, other than that described in **b.** through **e.** below, of which you are the sole owner.

**b.**   A partnership or joint venture, you are an insured. Your members, your partners, and their spouses are also insureds, but only with respect to the conduct of your business.

**c.**   A limited liability company, you are an insured. Your members are also insureds, but only with respect to the conduct of your business. Your managers are insureds, but only with respect to their duties as your managers.

**d.**   An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

**e.** A trust, you are an insured. Your trustees are also insureds, but only with respect to their duties as trustees.

\* \* \*

**E. LIABILITY AND MEDICAL EXPENSES GENERAL CONDITIONS**

\* \* \*

**2. Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a. Notice Of Occurrence Or Offense**

You or any additional insured under this Coverage Part must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

**(1)** How, when and where the "occurrence" or offense took place;

**(2)** The names and addresses of any injured persons and witnesses; and

**(3)** The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b. Notice Of Claim**

If a claim is made or "suit" is brought against any insured, you or any additional insured under this Coverage Part must:

**(1)** Immediately record the specifics of the claim or "suit" and the date received; and

**(2)** Notify us as soon as practicable.

You or any additional insured under this Coverage Part must see to it that we receive a written notice of the claim or "suit" as soon as practicable.

**F. LIABILITY AND MEDICAL EXPENSES DEFINITIONS**

\* \* \*

**5.** "Bodily injury" means physical:

**a.** Injury;

11

    **b.**    Sickness; or

    **c.**    Disease sustained by a person and, if arising out of the above, mental anguish or death at any time.

*     *     *

**16.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

*     *     *

**17**    "Personal and advertising injury" means injury, including consequential "bodily injury", arising out of one or more of the following offenses:

    **a.**    False arrest, detention or imprisonment;

    **b.**    Malicious prosecution;

    **c.**    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person or organization occupies, committed by or on behalf of its owner, landlord or lessor;

    **d.**    Oral, written, electronic, or any other manner of publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    **e.**    Oral, written, electronic, or any other manner of publication of material that violates a person's right of privacy;

    **f.**    Copying, in your "advertisement", a person's or organization's "advertising idea" or style of "advertisement"; or

    **g.**    Infringement of copyright, slogan, or title of any literary or artistic work, in your "advertisement".

*     *     *

**20.**    "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

12

      **b.**      Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of "occurrence" that caused it.

      As used in this definition, "electronic data" is not tangible property.

*See* Exs. B through D.

    19.    The Primary Policies also include an Employment Practices Liability Coverage Form, which provides in part:

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**
**(CLAIMS MADE)**

<u>**NOTICE:**</u> **COVERAGE PROVIDED BY THIS COVERAGE PART IS CLAIMS MADE COVERAGE. EXCEPT AS OTHERWISE SPECIFIED HEREIN: COVERAGE APPLIES ONLY TO A CLAIM FIRST MADE AGAINST THE INSUREDS DURING THE POLICY PERIOD AND WHICH HAS BEEN REPORTED TO US IN ACCORDANCE WITH THE APPLICABLE NOTICE PROVISIONS. COVERAGE IS SUBJECT TO THE INSURED'S PAYMENT OF THE APPLICABLE DEDUCTIBLE. PAYMENTS OF CLAIM EXPENSES ARE SUBJECT TO, AND REDUCE, THE AVAILABLE LIMITS OF LIABILITY. PLEASE READ THE COVERAGE PART CAREFULLY AND DISCUSS THE COVERAGE WITH YOUR INSURANCE AGENT OR BROKER. UPON TERMINATION OF THIS COVERAGE PART, EXTENDED REPORTING PERIOD COVERAGE IS AVAILABLE.**

            \*     \*     \*

**SECTION I • INSURING AGREEMENT**

**Employment Practices Liability**

We shall pay "loss" on behalf of the "insureds" resulting from an "employment practices claim" first made against the **"**Insureds" during the "policy period" or Extended Reporting Period, if applicable, for an "employment practices wrongful act" by the "insureds".

            \*     \*     \*

    **K.**      "Employment practices claim" means any:

        **1.**      written demand for monetary damages or other civil non-monetary relief commenced by the receipt of such demand, including, without limitation, a written demand for employment reinstatement;

13

**2.**     civil proceeding, including an arbitration or other alternative dispute resolution proceeding, commenced by the service of a complaint, filing of a demand for arbitration, or similar pleading; or

**3.**     formal administrative or regulatory proceeding, including, without limitation, a proceeding before the Equal Employment Opportunity Commission or similar governmental agency, commenced by the filing of a notice of charges, formal investigative order or similar document;

by or on behalf of an "employee", an applicant for employment with an "insured entity", or an "independent contractor".

"Employment practices claim" also means the receipt of a notice of violation, order to show cause, or a written demand for monetary or injunctive relief that is the result of an audit conducted by the United States Office of Federal Contract Compliance Programs.

"Employment practices claim" also means a written request to the "insureds" to toll or waive a statute of limitations regarding a potential "Employment practices claim" as described above. Such "claim" shall be commenced by the receipt of such request.

However**, "**employment practices claim" shall not include any labor or grievance proceeding or arbitration that is subject to a collective bargaining agreement.

**L.**     "Employment practices wrongful act" means:

**1.**     wrongful dismissal, discharge, or termination of employment (including constructive dismissal, discharge, or termination), wrongful failure or refusal to employ or promote, wrongful discipline or demotion, failure to grant tenure, negligent employment evaluation, or wrongful deprivation of career opportunity;

**2.**     sexual or other workplace harassment, including bullying in the workplace, quid pro quo and hostile work environment;

**3.**     employment discrimination, including discrimination based upon age, gender, race, color, creed, marital status, sexual orientation or preference, gender identity or expression, genetic makeup, or refusal to submit to genetic makeup testing, pregnancy, disability, HIV or other health status, Vietnam Era Veteran or other military status, or other protected status established under federal, state, or local law;

14

**4.** "Retaliation";

**5.** breach of any oral, written, or implied employment contract, including, without limitation, any obligation arising from a personnel manual, employee handbook, or policy statement; or

**6.** violation of the Family and Medical Leave Act.

"Employment practices wrongful act" also means the following, but only when alleged in addition to or as part of any "employment practices wrongful act" described above:

**a.** employment-related wrongful infliction of mental anguish or emotional distress;

**b.** failure to create, provide for or enforce adequate or consistent employment-related policies and procedures;

**c.** negligent retention, supervision, hiring or training;

**d.** employment-related invasion of privacy, defamation, or misrepresentation; or

**e.** an "employee data privacy wrongful act".

\*       \*       \*

**RETROACTIVE DATE ENDORSEMENT –
EMPLOYMENT PRACTICES LIABILITY**

This endorsement modifies insurance provided under the following:

**EMPLOYMENT PRACTICES LIABILITY COVERAGE FORM**

**I.** **SECTION I - INSURING AGREEMENT** of this Coverage Part is amended to include the following:

This Coverage Part applies only to "claims" for "wrongful acts" that occurred on or after the "retroactive date" set forth in the Declarations and before the end of the "policy period", regardless of whether such "claim" is made during the "policy period" or the Extended Reporting Period, if applicable.

**II.** The following definition is added to **SECTION II - DEFINITIONS** of this Coverage Part:

"Retroactive date" means the date specified in the Declarations. If no date is specified, the "retroactive date" will be the same as the Effective Date of this Coverage Part.

All other terms and conditions of this Coverage Part remain unchanged.

*See* Exs. B through D.

20. Subject to all of their terms, all of the Umbrella Policies contain the following terms, exclusions, and conditions:

**UMBRELLA LIABILITY SUPPLEMENTAL POLICY**

\* \* \*

**A. COVERAGES**

**1. Umbrella Liability Insurance**

**Insuring Agreement**

**a.** We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance" or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies caused by an "occurrence". But, the amount we will pay as "damages" is limited as described in Section **D. LIMITS OF INSURANCE**.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Section **B. INVESTIGATION, DEFENSE, SETTLEMENT**.

**b.** This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" only if:

**(1)** The "bodily injury" or "property damage" occurs during the "policy period", or the "personal and advertising injury" is caused by an offense committed during the "policy period"; and

**(2)** Prior to the "policy period", no "insured" listed under Paragraph **1.** of Section **C. WHO IS AN INSURED** and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed "insured" or authorized "employee" knew, prior to the "policy period", that the "bodily injury" or "property damage" occurred, then any continuation,

16

change or resumption of such "bodily injury" or "property damage" during or after the "policy period" will be deemed to have been known prior to the "policy period".

**c.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "insured" listed under Paragraph **1.** of Section **C. WHO IS AN INSURED** or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)** Receives a written or verbal demand or claim for "damages" because of the "bodily injury" or "property damage"; or

**(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

**2.** **Exclusions**

This Supplemental Policy does not apply to:

\*     \*     \*

**d.** **Personal And Advertising Injury**

"Personal and advertising injury".

**(1)** EXCEPTION

This exclusion does not apply to the extent that coverage for such "personal and advertising injury" is provided by "underlying insurance", but in no event shall any "personal and advertising injury" coverage provided under this Supplemental Policy apply to any claim or "suit" to which "underlying insurance" does not apply. This EXCEPTION applies only to the extent that such coverage provided by the "underlying insurance" is maintained having limits as set forth in the Schedule Of Underlying Insurance.

When this EXCEPTION applies, the insurance provided under this Supplemental Policy for "personal and advertising injury" will follow the same provisions, exclusions and

17

limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance.

This EXCEPTION does not apply to:

\*      \*      \*

**(b)      Access Or Disclosure Of Confidential Or Personal Information**

"Personal and advertising injury" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information.

This exclusion applies even if damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of any access to or disclosure of any person's or organization's confidential or personal information.

\*      \*      \*

**e.      Underlying Insurance**

The amount of any injury or damage:

**(1)**      Covered by "underlying insurance" but for any defense which any underlying insurer may assert because of the "insured's" failure to comply with any condition of its coverage part, policy, or endorsement; or

**(2)**      For which damages would have been payable by "underlying insurance" but for the actual or alleged insolvency or financial impairment of an underlying insurer.

\*      \*      \*

**o.      Expected Or Intended**

"Bodily injury" or "property damage" expected or intended from the standpoint of the "insured".

18

This exclusion does not apply to "bodily injury" or "property damage" resulting from the use of reasonable force to protect persons or property.

\*       \*       \*

**s.**     **Employment Practices Liability**

Any injury or damage to:

**(1)**     A person arising out of any:

    **(a)**     Refusal to employ that person;

    **(b)**     Termination of that person's employment; or

    **(c)**     Employment-related practices, policies, acts or omissions, such as coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination, malicious prosecution or false arrest directed at that person; or

**(2)**     The spouse, child, parent, brother or sister of that person, as a consequence of "bodily injury" or "personal and advertising injury" to that person at whom any of the employment-related practices described in Paragraphs **(1)(a)**, **(1)(b)** or **(1)(c)** above is directed.

**(3)** This exclusion applies:

    **(a)** Whether the injury-causing event described in Paragraphs **(1)(a)**, **(1)(b)** or **(1)(c)** above occurs before employment, during employment or after employment of that person;

    **(b)** Whether the "insured" may be liable as an employer or in any other capacity; and

    **(c)** To any obligation to share damages with or repay someone else who must pay damages because of the injury.

\*       \*       \*

**w.**     **Access Or Disclosure Of Confidential Or Personal Information And Data-Related Liability**

**(1)**     Damages because of "bodily injury" or "property damage" arising out of any access to or disclosure of any person's or organization's confidential or personal information, including patents, trade secrets, processing methods, customer lists, financial information, credit card information, health information or any other type of nonpublic information; or

**(2)**     Damages arising out of the loss of, loss of use of, damage to, corruption of, inability to access, or inability to manipulate "electronic data".

This exclusion applies even if such damages are claimed for notification costs, credit monitoring expenses, forensic expenses, public relations expenses or any other loss, cost or expense incurred by you or others arising out of that which is described in Paragraph (1) or (2) above.

However, unless Paragraph (1) above applies, this exclusion does not apply to "damages" because of "bodily injury".

\*     \*     \*

**y.**     **Recording And Distribution Of Material Or Information In Violation Of Law**

"Bodily injury", "property damage", or "personal and advertising injury" arising directly or indirectly out of any action or omission that violates or is alleged to violate:

**(1)**     The Telephone Consumer Protection Act (TCPA), including any amendment of or addition to such law;

**(2)**     The CAN-SPAM Act of 2003, including any amendment of or addition to such law;

**(3)**     The Fair Credit Reporting Act (FCRA), and any amendment of or addition to such law, including the Fair and Accurate Credit Transaction Act (FACTA); or

**(4)**     Any federal, state, or local statute, ordinance or regulation, other than the TCPA, CAN-SPAM Act of 2003 or FCRA and their amendments and additions, that addresses, prohibits or limits the printing,

dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information.

\*      \*      \*

**E.      CONDITIONS**

\*      \*      \*

**3.      Duties In The Event Of Occurrence, Claim Or Suit**

**a.**      You, or any other "insured" under this Supplemental Policy must see to it that we are notified as soon as practicable of an "occurrence" which may result in a claim under this Supplemental Policy.

**(1)**      This requirement applies only when such "occurrence" is known to any of the following:

**(a)**      You, or any other "insured" under this Supplemental Policy that is an individual;

**(b)**      Any partner, if you or any other "insured" under this Supplemental Policy is a partnership;

**(c)**      Any manager, if you or any other "insured" under this Supplemental Policy is a limited liability company;

**(d)**      Any "executive officer" or insurance manager, if you or any other "insured" under this Supplemental Policy is a corporation.

**(e)**      Any trustee, if you or any other "insured" under this Supplemental Policy is a trust; or

**(f)**      Any elected or appointed official, if you or any other "insured" under this Supplemental Policy is a political subdivision or public entity.

This duty applies separately to you and any other "insured" under this Supplemental Policy.

**(2)**      To the extent possible, notice should include:

**(a)** How, when and where the "occurrence" took place;

**(b)** The names and addresses of any injured persons and witnesses; and

**(c)** The nature and location of any injury or damage arising out of the "occurrence".

\*  \*  \*

## LIMITATION OF COVERAGE - TECHNOLOGY SERVICES

This endorsement modifies insurance provided under the following:

## UMBRELLA LIABILITY SUPPLEMENTAL POLICY

Except as otherwise stated in this endorsement, the terms and conditions of the Supplemental Policy apply.

**A.** The following is added to Paragraph **A.2.**, **Exclusions**:

### Limitation of Coverage – Technology Services

**(1)** This Supplemental Policy does not apply to:

**(a)** "Bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render professional services, including "technology services," as defined in this endorsement. This exclusion applies whether "technology services" are performed by you or by others on your behalf.

**(b)** Any injury or damage resulting from the "hazardous properties" of "nuclear material" if the injury or damage arises out of any "technology services" in connection with the planning, construction, maintenance or use of any "nuclear facility". For the purposes of this exclusion, injury or damage includes all forms of radioactive contamination of property.

**(2) EXCEPTION**

**(a)** However, exclusion **(a)** above does not apply to the extent that the underlying insurance applies to "bodily injury", "property damage" or "personal and advertising injury" arising out of the rendering of or failure to render "technology services."

22

**(b)** Any coverage restored by this **EXCEPTION** applies only to the extent that such coverage provided by the "underlying insurance" is maintained having limits as set forth in the Schedule of Underlying Insurance Policies.

**B.** The following is added to Section **F.**, **DEFINITIONS** as it relates to this endorsement:

"Technology services" means the following:

    **a.**    Consulting, analysis, design, installation, training, maintenance, support and repair of or on:

        **(1)** Software;

        **(2)** Wireless applications;

        **(3)** Firmware;

        **(4)** Shareware;

        **(5)** Networks;

        **(6)** Systems;

        **(7)** Hardware;

        **(8)** Devices; or

        **(9)** Components;

    **b.**    Integration of systems;

    **c.**    Processing of, management of, mining or warehousing of data;

    **d.**    Administration, management, operation or hosting of: another party's systems, technology or computer facilities;

    **e.**    Website development; website hosting;

    **f.**    Internet access services; intranet, extranet or electronic information connectivity services; software application connectivity services;

    **g.**    Manufacture, sale, licensing, distribution, or marketing of: software, wireless applications, firmware, shareware, networks, systems, hardware, devices or components;

**h.** Design and development of: code, software or programming; and

**i.** Providing software application: services, rental or leasing.

\* \* \*

## FOLLOWING FORM – PROGRAMMING AND RELATED COMPUTER SERVICES

This endorsement modifies insurance provided under the following:

## UMBRELLA LIABILITY SUPPLEMENTAL POLICY

Except as otherwise stated in this endorsement, the terms and conditions of the Supplemental Policy apply.

**A.** The following is added to Paragraph **2.** of Section **A. COVERAGES**:

**Programming And Related Computer Services**

This Supplemental Policy does not apply to "bodily injury", "property damage", or "personal and advertising injury":

**(1)** Arising out of or which would not have occurred but for "programming".

**(2)** Arising out of the rendering of or failure to render any service by you or on your behalf in connection with the selling, licensing, franchising, furnishing, or design of your computer software or "programming" to others including electronic data programs, designs, specifications, manuals, and instructions. Service means all services provided to a customer or vendor including but not limited to consultation or advice on purchasing or design decision and post-purchase technical support.

**(3)** Arising out of:

**(a)** an error, omission, defect or deficiency in any test performed, or an evaluation, a consultation, advice or "design service" provided by or on behalf of any insured; or

**(b)** the reporting of or reliance upon any such test, evaluation, consultation, advice or "design service".

**(4) EXCEPTION**

However, this exclusion does not apply to the extent that the "underlying insurance" provides coverage for such liability with minimum underlying limits as described in the Schedule of Underlying Insurance.

Any coverage restored by this **EXCEPTION** applies:

**(a)**    Only to the extent of the coverage provided by the "underlying insurance" and in no event shall this umbrella coverage apply to any claim or "suit" not covered by the "underlying insurance".

**(b)**    Only to the extent that such coverage provided by the "underlying insurance" is maintained having limits as set forth in the Extension Schedule of Underlying Insurance Policies; and

**(c)**    Only to the extent that any claim or "suit" is otherwise covered by the terms and conditions of this Supplemental Policy.

**B.**    The following definitions are added to Section **F. DEFINITIONS**:

    **1.**    "Programming" means any of the following:

        **a.**    Statements or instructions, regardless of the form or method of their embodiment, that are used or intended to be used directly or indirectly in or with a computer or computer system. This includes but is not limited to computer software, electronic processing programs, or designs; or

        **b.**    Any and all information that is used or intended to be used in connection with or to explain such statements or instructions or their operation, such as specifications, flow diagrams, or manuals.

    **2.**    Design service" means all design services including but not limited to website or webpage design, including the selection of material or data displayed or material or data provided to search engines.

*See* Exs. B through D.

**C.**    <u>***Notice to Hartford and Actual and Justiciable Controversy***</u>

21.    Hartford did not receive notice of the Underlying Action until October 7, 2022, when Hartford received a letter dated October 5, 2022 (the "October 5, 2022 Letter") from the

Underlying Plaintiffs' counsel demanding documents and information concerning insurance pursuant to Fla. Stat. § 627.4137.

22.    Florida law does not govern the claim handling of this matter.

23.    Illinois law governs the claim handling of this matter.

24.    On November 7, 2022, Hartford responded to the October 5, 2022 Letter, providing the information requested therein.

25.    Also on November 7, 2022, Hartford issued a coverage position letter to EasyWorkforce denying coverage with regard to the Underlying Action.

26.    Hartford denies that it owes EasyWorkforce any defense or indemnity obligation under the Policies.

27.    An actual justiciable controversy exists between Hartford and EasyWorkforce as to the availability of insurance coverage to EasyWorkforce under the Policies. Pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, this Court is vested with the power to declare the rights and liabilities of the parties hereto and to give such other and further relief that may be necessary.

## COUNT I
### EasyWorkforce Software, LLC Is Not an Insured and No Conduct is Attributable to EasyWorkforce Software, Inc. During the Effective Dates of the Policies

28.    Hartford incorporates and restates the allegations of Paragraphs 1 through 27 above as if set forth herein.

29.    The Complaint in the Underlying Action refers to both EasyWorkforce Software, LLC and EasyWorkforce Software, Inc.

30.    The Policies name EasyWorkforce Software, Inc. as the insured.

31.    EasyWorkforce Software, LLC is not the named insured and does not otherwise qualify as an insured under the Policies.

32.     EasyWorkforce Software, LLC is the successor-in-interest to EasyWorkforce Software, Inc. and/or EasyWorkforce Software, Inc. converted to a limited liability company as of March 19, 2020.

33.     Any conduct attributable to Hartford's insured — EasyWorkforce Software, Inc. — relates to conduct prior to March 19, 2020 and therefore predates the inception of any of the Policies.

34.     Any conduct during the effective dates of the Policies is attributable to EasyWorkforce Software, LLC, which is not an insured.

35.     Accordingly, no coverage is afforded to EasyWorkforce under the Policies with regard to the Underlying Action.

36.      WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.     A declaration finding Hartford owes no duty to defend or indemnify EasyWorkforce for the claims against it in the Underlying Action; and

B.     For all such just and equitable relief, including costs of this Lawsuit.

## COUNT II
### No "Bodily Injury" or "Property Damage" Caused By An "Occurrence"
### (All Policies)

37.     Hartford incorporates and restates the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

38.     Subject to all of their terms, the Policies provide coverage for damages because of "bodily injury" or "property damage" caused by an "occurrence," as those terms are defined in the Policies.

39.     The allegations in Counts 7 and 9 in the Underlying Action do not concern claims for damages because of "bodily injury" or "property damage" caused by an "occurrence."

40.     The allegations in Count 8 do not concern claims for damages because of "bodily injury" or "property damage".

41.     Accordingly, Hartford does not owe any defense or indemnity obligations to EasyWorkforce under the "bodily injury" or "property damage" coverage parts of the Policies for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.     A declaration finding that Hartford owes no duty to defend or indemnify EasyWorkforce for the claims against it in the Underlying Action; and

B.     For all such just and equitable relief, including costs of this Lawsuit.

### COUNT III
### No "Personal and Advertising Injury"
### (All Policies)

42.     Hartford incorporates and restates the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

43.     Subject to all of their terms, the Policies provide coverage for "damages" because of "personal and advertising injury" as those terms are defined and used in the Policies.

44.     The allegations in the Underlying Action concern EasyWorkforce's alleged failure to have users of EasyWorkforce's timekeeping software and timeclocks execute a written release before obtaining their biometric information as required by BIPA and EasyWorkforce's alleged failure to have a publicly available written policy concerning the retention and destruction of such biometric information. Moreover, the allegations concern the capturing, collecting, storing, or use of biometric identifiers and information.

45.     The allegations in the Underlying Action to not allege "personal and advertising injury" because, among other things, the allegations do not allege the oral, written, or electronic publication of material that violates a person's right of privacy.

46.     Accordingly, Hartford has no duty to defend or indemnify EasyWorkforce for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.      A declaration finding that Hartford owes no duty to defend or indemnify EasyWorkforce for the claims against it in the Underlying Action; and

B.      For all such just and equitable relief, including costs of this Lawsuit.

**COUNT IV**
**Exclusion B.1.p.(11) – Violation of a Person's Right of Privacy**
**Created by any State or Federal Act**
**(Primary Policies)**

47.     Hartford incorporates and restates the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

48.     The Primary Policies, at Exclusion B.1.p.(11), exclude coverage for any "personal and advertising injury" "[a]rising out of the violation of a person's right of privacy created by any state or federal act."

49.     BIPA is a state act that creates a right of privacy with regard to biometric identifiers and information.

50.     All of the allegations and causes of action in the Underlying Action arise out of EasyWorkforce's alleged capturing, collecting and use of Underlying Plaintiffs' biometric information and the failure to have a publicly available written policy concerning the retention and destruction of such biometric information in violation of BIPA.

51. To the extent "personal and advertising injury" is alleged in the Underlying Action, which Hartford denies, this exclusion bars coverage for the claims against EasyWorkforce in Underlying Action.

52. Accordingly, Hartford has no duty to defend or indemnify EasyWorkforce for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A. A declaration finding that Hartford owes no duty to defend or indemnify EasyWorkforce for the claims against it in the Underlying Action; and

B. For all such just and equitable relief, including costs of this Lawsuit.

<u>**COUNT V**</u>
<u>**Exclusion B.1.p.(8) – Personal and Advertising Injury Arising Out of an Offense**</u>
<u>**Committed by an Insured whose Business is Designing or Determining Content of**</u>
<u>**Web Sites for Others**</u>
<u>**(Primary Policies)**</u>

53. Hartford incorporates and restates the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

54. The Primary Policies, at Exclusion B.1.p.(8), exclude coverage for any "personal and advertising injury" by an insured whose business is designing or determining content of web sites for others.

55. EasyWorkforce is in the business of designing software and web sites for employers to manage and collect employee data.

56. To the extent "personal and advertising injury" is alleged in the Underlying Action, which Hartford denies, this exclusion bars coverage for the claims against EasyWorkforce in Underlying Action.

57.     Accordingly, Hartford has no duty to defend or indemnify EasyWorkforce for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.     A declaration finding that Hartford owes no duty to defend or indemnify EasyWorkforce for the claims against it in the Underlying Action; and

B.     For all such just and equitable relief, including costs of this Lawsuit.

### COUNT VI
### Exclusions B.1.p.(15) (Primary Policies) and Exclusion 2.d.(1)(b) (Umbrella Policies) – Personal and Advertising Injury Arising Out of Access or Disclosure of Confidential or Personal Information (All Policies)

58.     Plaintiff incorporates and restates the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

59.     The Primary Policies, at Exclusion B.1.p.(15), exclude coverage for any "personal and advertising injury" . . . "[a]rising out of any access to or disclosure of any person's or organization's confidential or personal information, health information or any other type of nonpublic information."

60.     The Umbrella Policies, at Exclusion 2.d.(1)(b), exclude coverage for any "personal and advertising injury" "[a]rising out of any access to or disclosure of any person's or organization's confidential or personal information, health information or any other type of nonpublic information."

61.     All of the damages sought in the Underlying Action arise out of EasyWorkforce's access to the Underlying Plaintiffs' confidential, personal, and nonpublic biometric information.

62.     To the extent "personal and advertising injury" is alleged in the Underlying Action, which Hartford denies, these exclusions bar coverage for the claims against EasyWorkforce in Underlying Action.

63.     Additionally, to the extent there are allegations concerning the *disclosure* by EasyWorkforce of Underlying Plaintiffs' personal and nonpublic biometric information, which Hartford denies, these exclusions would similarly bar coverage.

64.     Accordingly, Hartford has no duty to defend or indemnify EasyWorkforce for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.     A declaration finding that Hartford owes no duty to defend or indemnify EasyWorkforce for the claims against it in the Underlying Action; and

B.     For all such just and equitable relief, including costs of this Lawsuit.

### COUNT VII
### Exclusion B.1.q. (Primary Policies) and Exclusion 2.w. (Umbrella Policies) – Access or Disclosure of Confidential Or Personal Information and Data-Related Liability
### (All Policies)

65.     Hartford incorporates and restates the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

66.     The Primary Policies, at Exclusion B.1.q., exclude coverage for damages because of "bodily injury" or "property damage" arising out of any access to or disclosure of any person's or organization's confidential or personal information.

67.     The Umbrella Policies, at Exclusion 2.w., similarly exclude coverage for "bodily injury" or "property damage" "[a]rising out of any access to or disclosure of any person's or

organization's confidential or personal information, health information or any other type of nonpublic information."

68.     All of the damages sought in the Underlying Action arise out of EasyWorkforce's access to or disclosure of the Underlying Plaintiffs confidential and personal biometric information.

69.     To the extent Underlying Plaintiffs allege "bodily injury" or "property damage", which Harford denies, these exclusions bar coverage.

70.     Accordingly, Hartford has no duty to defend or indemnify EasyWorkforce for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.     A declaration finding that Hartford owes no duty to defend or indemnify EasyWorkforce for the claims against it in the Underlying Action; and

B.     For all such just and equitable relief, including costs of this Lawsuit.

### COUNT VIII
### Exclusion B.1.t. (Primary Policies) and Exclusion 2.v. (Umbrella Policies) – Recording and Distribution of Material or Information in Violation of Law Exclusion
### (All Policies)

71.     Hartford incorporates and restates the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

72.     The Primary Policies, at Exclusion B.1.t., bar coverage for "bodily injury", "property damage" or "personal and advertising injury" "arising directly or indirectly out of any action or omission that violates or is alleged to violate . . . [a]ny federal, state, or local statute, ordinance, or regulation . . . that addresses, prohibits or limits the . . . dissemination, disposal,

collecting, recording, sending, transmitting, communication or distribution of material or information."

73.     The Umbrella Policies, at Exclusion 2.y., exclude coverage for bar coverage for "bodily injury", "property damage" or "personal and advertising injury" "arising directly or indirectly out of any action or omission that violates or is alleged to violate . . . [a]ny federal, state, or local statute, ordinance, or regulation . . . that addresses, prohibits or limits the . . . dissemination, disposal, collecting, recording, sending, transmitting, communication or distribution of material or information."

74.     The claims in the Underlying Action arise out of violations of a state law that prohibits or limits the collection and/or recording of employees' biometric information.

75.     To extent "bodily injury", "property damage" or "personal and advertising injury" is alleged in the Underlying Action, which Hartford denies, the Recording and Distribution of Material or Information in Violation of Law Exclusion bars coverage.

76.     Accordingly, Hartford has no duty to defend or indemnify EasyWorkforce for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.     A declaration finding that Hartford owes no duty to defend or indemnify EasyWorkforce for the claims against it in the Underlying Action; and

B.     For all such just and equitable relief, including costs of this Lawsuit.

## COUNT IX
### Exclusion B.1.p.(2) – Publication that Took Place Before the Beginning of the Policy Period
### (Primary Policies)

77.    Hartford incorporates and restates the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

78.    The Primary Policies, at Exclusion B.1.p.(2), exclude coverage for "personal and advertising injury" "[a]rising out of oral, written, electronic, or any other manner of publication of material whose first publication took place before the beginning of the policy period."

79.    The Underlying Plaintiffs allege conduct dating to June 24, 2016.

80.    The first inception date of the Policies is September 25, 2020.

81.    To the extent "personal and advertising injury" is alleged in the Underlying Action, which Hartford denies, this exclusion bars coverage for any "personal and advertising injury" taking place prior to September 25, 2020.

82.    Similarly, to the extent conduct occurred prior to the inception dates of the 2021-22 Policy and the 2022-23 Policy, this exclusion bars coverage under those respective policies for any "personal and advertising injury" occurring prior to those respective inception dates.

83.    Accordingly, Hartford has no duty to defend or indemnify EasyWorkforce for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.    A declaration finding that Hartford owes no duty to defend or indemnify EasyWorkforce for the claims against it in the Underlying Action; and

B.    For all such just and equitable relief, including costs of this Lawsuit.

**COUNT X**
**Exclusion B.1.a. (Primary Policies) and Exclusion 2.o (Umbrella Policies) – Expected or**
**Intended Injury**
**(All Policies)**

84.     Hartford incorporates and restates the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

85.     The Primary Policies, at Exclusion B.1.a., exclude coverage for damages because of "bodily injury" or "property damage" expected or intended from the standpoint of the insured.

86.     Exclusion B.1.a. also bars coverage for "personal and advertising injury" arising out of an offense committed by, at the direction of or with the consent or acquiescence of the insured with the expectation of inflicting "personal and advertising injury".

87.     The Umbrella Policies, at Exclusion 2.o, exclude coverage for "bodily injury" or "property damage" expected or intended from the standpoint of the "insured."

88.     Underlying Plaintiffs allege EasyWorkforce's conduct was intentional.

89.     To the extent EasyWorkforce's conduct was expected, intended, or committed with the expectation of inflicting "personal and advertising injury", these exclusions bar coverage.

90.     Accordingly, Hartford has no duty to defend or indemnify EasyWorkforce under for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.      A declaration finding that Hartford owes no duty to defend or indemnify EasyWorkforce for the claims against it in the Underlying Action; and

B.      For all such just and equitable relief, including costs of this Lawsuit.

**Count XI**
**Exclusion B.1.r. (Primary Policies) and Exclusion 2.s(1)(c) (Umbrella) – Employment-Related Practices**
**(All Policies)**

91.     Hartford incorporates and restates the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

92.     The Primary Policies, at Exclusion B.1.r, exclude coverage for "bodily injury" or "personal and advertising injury" to a person arising out of any employment-related practices, policies, acts or omissions, as that term is defined under the Policies.

93.     The Umbrella Policies, at Exclusion 2.s(1)(c), exclude coverage for injury or damage to a person arising out of any employment-related practices, policies, acts or omissions, as that term is defined under the Policies.

94.     The Underlying Action arises from employment-related policies, acts or omissions in connection with the collection of employees' biometric data to track employees' time.

95.     To extent "bodily injury" or "personal and advertising injury" is alleged in the Underlying Action, which Hartford denies, these exclusions bar coverage.

96.     Accordingly, Hartford has no duty to defend or indemnify EasyWorkforce for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.      A declaration finding that Hartford owes no duty to defend or indemnify EasyWorkforce for the claims against it in the Underlying Action; and

B.      For all such just and equitable relief, including costs of this Lawsuit.

## COUNT XII
## Policy Period Provisions and Known Loss/Loss in Progress Doctrine
## (All Policies)

97.     Hartford incorporates and restates the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

98.     The Policies only provide coverage for "bodily injury" and "property damage" caused by an "occurrence" that occurs within the given policy period.

99.     The Policies similarly only provide coverage for "personal and advertising injury" for an offense that was committed within the policy period.

100.    No coverage is afforded for any occurrence or claim that the insured knew had occurred prior to the inception date of any given Policy.

101.    Plaintiffs allege conduct dating to June 24, 2016.

102.    The first inception date of the Policies is September 25, 2020.

103.    Thus, no coverage is afforded under the Policies for any conduct occurring prior to September 25, 2020.

104.    Similarly, to the extent conduct occurred prior to the inception dates of the 2021-22 Policy and the 2022-23 Policy, coverage would not be afforded for any conduct occurring prior to those respective inception dates.

105.    Additionally, Plaintiffs commenced suit on June, 24, 2021.

106.    Service of process was effectuated on EasyWorkforce on June 29, 2021.

107.    Thus, under the Known Loss/ Continuing Loss Doctrine, no coverage is afforded under the 2022-23 Policies because, at a minimum, EasyWorkforce was aware of the Underlying Action and the claims asserted therein before the inception date of the 2022-23 Policies.

108.    Accordingly, Hartford has no duty to defend or indemnify EasyWorkforce for the claims in the Underlying Action.

38

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.    A declaration finding that Hartford owes no duty to defend or indemnify EasyWorkforce, for the claims against it in the Underlying Action; and

B.    For all such just and equitable relief, including costs of this Lawsuit.

## COUNT XIII
### Breach of Notice Conditions
### (All Policies)

109.    Hartford incorporates and restates the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

110.    The Primary Policies, at the Loss Conditions in the Business Liability Coverage Part, specify that the insured must provide notice as soon as practicable of an occurrence or an offense which may result in a claim.

111.    The Umbrella Policies, at E. Conditions. 3. Duties In the Event of Occurrence, Claim Or Suit state that that the insured "must see to it that we are notified as soon as practicable of an 'occurrence' which may result in a claim under this Supplemental Policy."

112.    EasyWorkforce was aware of the claims in the Underlying Action no later than June 29, 2021.

113.    Hartford was not made aware of the Underlying Action until October 7, 2022.

114.    EasyWorkforce's delay from June 29, 2021 to October 7, 2022 in providing notice is not as soon as practicable.

115.    EasyWorkforce breached the notice conditions in the Policies and Hartford was materially prejudiced as a result.

116.    Accordingly, Hartford has no duty to defend or indemnify EasyWorkforce for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.    A declaration finding that Hartford owes no duty to defend or indemnify EasyWorkforce, for the claims against it in the Underlying Action; and

B.    For all such just and equitable relief, including costs of this Lawsuit.

## COUNT XIV
### Coverage Is Not Triggered Under the Employment Practices Liability Coverage Part (Primary Policies– Employment Practices Coverage Form)

117.    Hartford incorporates and restates the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

118.    Subject to all of their terms, the Primary Policies provide certain Employment Practices Liability Coverage for "loss" resulting from an "employment practices claim" for an "employment practices wrongful act" by the "insureds" as those terms are defined in the Primary Policies.

119.    The Underlying Action does not allege an "employment practices wrongful act" as the term is defined in the Primary Policies.

120.    As such, no Employment Practices Liability Coverage is triggered with regard to the Underlying Action.

121.    Accordingly, Hartford has no duty to defend or indemnify EasyWorkforce for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.    A declaration finding that Hartford owes no duty to defend or indemnify EasyWorkforce, for the claims against it in the Underlying Action; and

B.    For all such just and equitable relief, including costs of this Lawsuit.

40

**COUNT XV**
**No Claim First Made and Reported Within a Policy Period and All Claims In Underlying Action are Interrelated**
**(Primary Policies– Employment Practices Coverage Form)**

122.     Hartford incorporates and restates the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

123.     Subject to all of their terms, the Primary Policies provide certain Employment Practices Liability Coverage for "loss" resulting from an "employment practices claim" first made against the "Insureds" during the "policy period" or Extended Reporting Period, if applicable, for an "employment practices wrongful act" by the "insureds" as those terms are defined in the Primary Policies.

124.     No Extended Reporting Period was purchased.

125.     All of the claims in the Underlying Action share a common nexus of fact, circumstance, situation, event, transaction, goal, motive, methodology, or cause or series of causally connected facts, circumstances, situations, events, transactions, goals, motives, methodologies or causes.

126.     All of the claims in the Underlying Action are "interrelated wrongful acts" as that terms is defined in the Primary Policies.

127.     Accordingly, all of the claims in the Underlying Action are deemed to be a single claim first made on the earliest that that any such claim was first made.

128.     The claims in the Underlying Action were not first made and reported during the same "policy period."

129.     Accordingly, Hartford has no duty to defend or indemnify EasyWorkforce for the claims in the Underlying Action.

41

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.      declaration finding that Hartford owes no duty to defend or indemnify EasyWorkforce for the claims against it in the Underlying Action; and

B.      For all such just and equitable relief, including costs of this Lawsuit.

## COUNT XVI
### No Coverage For Conduct Prior to Retroactive Date
### (Primary Policies– Employment Practices Coverage Form)

130.    Hartford incorporates and restates the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

131.    The Employment Practices Liability Coverage Form is subject to, among other things, a Retroactive Date Endorsement that states coverage is limited to claims for wrongful acts that occurred on or after September 18, 2020.

132.    The Underlying Action alleges conduct dating to June 24, 2016.

133.    To the extent the Employment Practices Liability Coverage Form is triggered and coverage is otherwise not excluded, which Hartford denies, the Retroactive Date Endorsement bars coverage under the Employment Practices Liability Coverage Part for any conduct prior to September 18, 2020.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.      A declaration finding that Hartford owes no duty to defend or indemnify EasyWorkforce for the claims against it in the Underlying Action; and

B.      For all such just and equitable relief, including costs of this Lawsuit.

**COUNT XVII**
**Exclusion 2.d. – "Personal and Advertising Injury" Exclusion**
**(Umbrella Policies)**

134.    Hartford incorporates and restates the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

135.    The Umbrella Policies, at Exclusion 2.d., bar coverage for "personal and advertising injury".

136.    None of the exceptions to Exclusion 2.d. are applicable to this coverage dispute because, among other things, no "personal and advertising injury" coverage is afforded under the Primary Policies.

137.    As such, no "personal and advertising injury" is afforded under the Umbrella Policies.

138.    Accordingly, Hartford has no duty to defend or indemnify EasyWorkforce for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.     A declaration finding that Hartford owes no duty to defend or indemnify EasyWorkforce for the claims against it in the Underlying Action; and

B.     For all such just and equitable relief, including costs of this Lawsuit.

**COUNT XVII**
**Exclusion 2.d. – "Personal and Advertising Injury" Exclusion**
**(Umbrella Policies)**

139.    Hartford incorporates and restates the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

140.    The Umbrella Policies, at Exclusion 2.d., bar coverage for "personal and advertising injury".

43

141.    None of the exceptions to Exclusion 2.d. are applicable to this coverage dispute because, among other things, no "personal and advertising injury" coverage is afforded under the Primary Policies.

142.    As such, no "personal and advertising injury" is afforded under the Umbrella Policies.

143.    Accordingly, Hartford has no duty to defend or indemnify EasyWorkforce for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.      A declaration finding that Hartford owes no duty to defend or indemnify EasyWorkforce for the claims against it in the Underlying Action; and

B.      For all such just and equitable relief, including costs of this Lawsuit.

**COUNT XVIII**
**Limitation of Coverage – Technology Services**
**(Umbrella Policies)**

144.    Hartford incorporates and restates the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

145.    The Umbrella Policies contain an endorsement entitled Limitation of Coverage – Technology Services which states the Umbrella Policies do not apply to "personal and advertising injury" arising out of the rendering of or failure to render professional services, including "technology services" as that term is defined in the endorsement.

146.    "Technology services" means, among other things, consulting, analysis, design, installation, training, maintenance, support and repair of or on software as well as website development.

147.     None of the exceptions to this exclusion are applicable to this coverage dispute because, among other things, no coverage is afforded for no "personal and advertising injury" coverage arising out of the rendering of or failure to render "technology services" under the Primary Policies.

148.     As such, no "personal and advertising injury" is afforded under the Umbrella Policies.

149.     Accordingly, Hartford has no duty to defend or indemnify EasyWorkforce for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.     A declaration finding that Hartford owes no duty to defend or indemnify EasyWorkforce for the claims against it in the Underlying Action; and

B.     For all such just and equitable relief, including costs of this Lawsuit.

## COUNT XIX
### Following Form – Programming and Related Computer Services
### (Umbrella Policies)

150.     Hartford incorporates and restates the allegations of Paragraphs 1 through 27 above as if fully set forth herein.

151.     The Umbrella Policies contain an endorsement entitled "Following Form – Programming and Related Computer Services" which states the Umbrella Policies do not apply to . . . "'personal and advertising injury' . . . (2) Arising out of the rendering of or failure to render any service by you or on your behalf in connection with the selling, licensing, franchising, furnishing, or design of your computer software . . . to others including electronic data programs, designs, specifications, manuals, and instructions."

45

152.     The Following Form – Programming and Related Computer Services Endorsement also excludes coverage for "personal and advertising injury" . . . "arising out of . . . [a] 'design service' provided by or on behalf of any insured."

153.     "Design service" is defined as "all design services including but not limited to website or webpage design, including the selection of material or data displayed or material or data provided to search engines."

154.     None of the exceptions in this exclusion are applicable to this coverage dispute because, among other things, no coverage is afforded under the Primary Policies for "personal and advertising injury" coverage arising out of a "Design service".

155.     As such, no "personal and advertising injury" is afforded under the Umbrella Policies.

156.     Accordingly, Hartford has no duty to defend or indemnify EasyWorkforce for the claims in the Underlying Action.

WHEREFORE, Plaintiff, Hartford Underwriters Insurance Company, prays that this Court enter the following relief:

A.     A declaration finding that Hartford owes no duty to defend or indemnify EasyWorkforce for the claims against it in the Underlying Action; and

B.     For all such just and equitable relief, including costs of this Lawsuit.

Respectfully Submitted,

By:  /s/ Michael J. O'Malley
     One of the Attorneys for Hartford
     Underwriters Insurance Company

Michael J. Duffy
Michael.Duffy@wilsonelser.com
Michael J. O'Malley
Michael.O'Malley@wilsonelser.com
Wilson Elser Moskowitz Edelman & Dicker LLP
55 West Monroe Street - Suite 3800

46

Chicago, Illinois 60603-5016
(312) 704-0550

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 7, 2022, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all parties of record in this case by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

By: _____ */s/ Michael O'Malley* _____

One of the Attorneys for Hartford Underwriters Insurance Company